## ROBINSON v. STANDARD OIL CO. OF LOUISIANA.

### No. 2000.

Court of Appeal of Louisiana. First Circuit.

Oct. 4, 1939.

Laycock & Moyse, of Baton Rouge, and Spearing, McClendon, McCabe & Schmidt, of New Orleans, for appellant.

T. M. Milling, A. M. Curtis, and R. B. Jennings, all of New Orleans, and M. J. Wilson and George M. Wallace, both of Baton Rouge, for appellee.

DORE, Judge.

This case having been before us on an appeal from a judgment in favor of plaintiff, the issues involved therein are fully stated in our opinion, and, for the purpose of this appeal, need not be restated. See La.App., 180 So. 237.

Upon remand, in pursuance to our decree, the only additional evidence offered and introduced was that contained in three statements signed by the deceased in connection with the pension or annuity which was paid him by the defendant company under its benefit plan in favor of employees. There was judgment in favor of defendant, and plaintiff prosecutes · this appeal.

Hardin Robinson, the deceased employee, was drawing $33 per month under the benefit plan of defendant company, which plan provided that these payments would be continued for one year after his death to be paid to the following beneficiaries: "If living with or dependent on the deceased for support at the time of his death to the extent of at least 20% of his pay: 1. Widow. 2. Surviving children, including step-children, in equal shares."

Plaintiff, having been legally married to the deceased, would be entitled to the twelve monthly payments of $33 each, if (1) she was living with the deceased at the time of his death; or (2), even if she was not living with him, if she was dependent on him for support to the extent of at least 20% of his pay.

For this decision, we shall treat these questions in reverse order.

█ It is our opinion that plaintiff has failed to prove that she was dependent on her deceased husband to the extent of 20% of his pay. She testified that he sent her money once or twice a month from the first part of 1934 until his death in November of that year. She testified that he sent her this money from Woodville, Miss., where he lived, to her in New Orleans, where she lived practically all the year, with the exception of a few weeks when she was with the deceased in Woodville. She testified that this money was sent to her by money orders in letters from the deceased. There were introduced in evidence some eleven or twelve letters from the deceased to plaintiff written at various times from February to June of 1934, and in none of these letters does deceased say anything about money or money orders being enclosed. He does say in some of these letters that he would send her her fare for her to come to Woodville to see him. She testified further that there were other letters received by her from her husband, but she failed to produce them or to explain her failure to do so. It is our opinion that she produced and filed all letters received by her from her husband. It is hardly possible that this colored man would have sent his wife money in these letters without mentioning that fact in the letters. Some of plaintiff's· relatives, with whom she lived in New Orleans, testified that these letters contained money, but we are not impressed with their testimony. We are of the opinion that they have confused

money contributions with bus fares which deceased sent to plaintiff. She has failed to prove any contribution by her husband to her save and except two bus fares from New Orleans to Woodville, which is not equivalent to 20% of his monthly benefits.

We now come to the question as to whether or not plaintiff was "living with" the deceased at the time of his death within the legal meaning of the benefit plan.

It appears that plaintiff and the deceased were married in August, 1931, at which time the deceased was drawing sick benefits from the defendant company. The couple lived together with the wife's relations in Pointe Coupee Parish until September, 1932, when the deceased went to Woodville, Miss., and lived with some of his relatives until his death in November, 1934. The wife, shortly after the separation in September, 1932, went to live with her brother in New Orleans. During the remainder of 1932 and during all of 1933, plaintiff had no communication with her husband whatever, nor did she even know where he was living. On February 9, 1934, she wrote to the defendant company asking for information as to the location of her husband, to which the company replied on February 11th that the last address it had of her husband was Woodville, Miss. Obviously, a correspondence was then begun between plaintiff and her husband, as we find letters in the record from him to her beginning in February, 1934, and continuing down to the early part of June of that year. The tone of these letters is affectionate, looking forward to either the wife coming to see the husband in Woodville or the husband visiting the wife in New Orleans. The wife visited and lived with her husband in Woodville for several days in March, 1934, and then returned to New Orleans, and a few weeks later she came back to Woodville and again lived with her husband for several weeks, going back to New Orleans in the early part of June. The last letter in the record from the husband to his wife is dated June 13, 1934. In this letter the husband writes about a house and says something about coming to see his wife and asks her to write again soon. Plaintiff wrote the defendant company on April 24, 1935, almost six months after the death of her husband, asking for information about him and stating that she heard he was dead. She also stated in that letter that she had stayed with her husband once in March, 1934, and again from April to June, 1934, and that he sent her away on June 7, 1934, telling her that he would come home in a month or so.

If the clause in the plan is to be interpreted liberally as in compensation suits, the plaintiff might be considered as living with her husband at the time of his death. There was no divorce or legal separation, nor was there any intention on the part of the parties to separate permanently. There was an actual break in the marital relations for some five months, during which time neither party heard from the other and made no effort to continue their marital relations. Even under the compensation law this was probably sufficient to bar her recovery. See Milton v. Long-Bell Lumber Co., 165 La. 336, 115 So. 582. The cases holding that the widow is entitled to recover in compensation suits where she was not physically living with the deceased employee, but was living at another place, were cases in which there was no break in the marital relations and where the husband frequently visited the wife and cohabited with her. See Harris et al. v. Louisiana Oil Refining Corp., 13 La.App. 416, 127 So. 40, and cases cited.

In our opinion, the plan adopted by the company and accepted by the employees, contemplated a certain amount of reasonable discretion to be exercised on the part of those administering the plan, and where these persons in good faith determine a fact connected with the administration of the plan, considerable weight should be given their finding. Just a little more than a month before his death, the deceased signed a statement to the effect that he was married but separated; that he was living alone and in a room rented from a family not related to him. Nothing is said in that statement about a dependent wife. The lower court evidently gave much weight to the statements of the deceased to the effect that he and plaintiff had been and were separated and were not "living with" each other. We cannot say that he manifestly erred.

For these reasons, the judgment appealed from is affirmed.